United States District Court
Eastern District of Michigan

CHRISTOPHER HOLMES,

    Plaintiff,

v.

ALAN GREEN, M.D., and
DETROIT COMMUNITY
HEALTH CONNECTION, a
domestic nonprofit corporation,

    Defendants.

Civil No.

Honorable
Mag. Judge

## Notice of Removal

Federal defendants, Alan Green, M.D., and Detroit Community Health Connection, petitioners herein, by their attorneys, pursuant to 42 U.S.C. § 233(c), hereby removes this action (Case No. 25-001517-NH), which is now pending in Wayne County Circuit Court for the State of Michigan from said state court to the United States District Court for the Eastern District of Michigan, Southern Division.

This action is removable because the federal defendant Alan Green, M.D. at all times relevant to this matter, was an employee of defendant Detroit Community Health Connection, which has been deemed eligible for coverage under the Federally Supported Health

Centers Assistance Act of 1992 (Public Law 102-501), 42 U.S.C. § 233(g). Accordingly, Detroit Community Health Connection is an "entity" within the meaning of 42 U.S.C. § 233(g), and Alan Green, M.D. is an employee of an entity within the meaning of 42 U.S.C. § 233(g), and therefore they are deemed to be employees of the United States Public Health Service covered by 42 U.S.C. §§ 233(a) and (c). (Exhibit A – Deeming Letters). Because they are deemed to be employees of the U.S. Public Health Service, defendants Alan Green, M.D., and Detroit Community Health Connection are eligible for coverage under the FTCA pursuant to 42 U.S.C. §§ 233(a) and (g). Under 42 U.S.C. §§ 233(a) and (g), a claim against the United States pursuant to the FTCA is the exclusive remedy available to the plaintiff in this case with respect to the alleged acts or omissions of federal defendants Alan Green, M.D., and Detroit Community Health Connection.

  This action is also removable because the Attorney General, through her designee, Kevin R. Erskine, Chief of the Civil Division of the United States Attorney's Office for the Eastern District of Michigan, has certified that defendants Alan Green, M.D., and Detroit Community Health Connection, who have been deemed to be employees of the U.S.

2

Public Health Service, were acting within the scope of their employment at the time of the incident out of which this suit arose. (Exhibit B – Certification of Scope of Employment).

This removal is timely because an action may be removed under 42 U.S.C. § 233(c) ". . . at any time before trial . . . ." A copy of the complaint that was filed in the Wayne County Circuit Court is attached.

Respectfully submitted,

Julie A. Beck
Acting United States Attorney

*s/Bradley H. Darling*
Bradley H. Darling
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
(313) 226-9137
Bradley.Darling@usdoj.gov

Date:  May 2, 2025

3

## Certificate of Service

I hereby certify that on May 2, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system. I further certify that I have served all parties involved through the mifile.courts.michigan.gov electronic filing system.

*s/Bradley H. Darling*
Bradley H. Darling
Assistant U.S. Attorney

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CHRISTOPHER HOLMES,

    Plaintiff,

v.

ALAN GREEN M.D., and
DETROIT COMMUNITY HEALTH
CONNECTION, a domestic nonprofit
corporation,

    Defendants.

Case No. 25-    -NH
Hon.

_____/

HERTZ SCHRAM PC
Steve J. Weiss (P32174)
Attorneys for Plaintiff
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48032
(248) 335-5000
sweiss@hertzschram.com
_____/

There is no other pending or resolved civil action
in any court arising out of the same transactions or
occurrences as alleged in this Complaint.

## COMPLAINT

Plaintiff, Christopher Holmes ("Plaintiff" or "Mr. Holmes"), by and through his attorneys, Hertz Schram PC, and for his Complaint against Defendants, Alan Green, M.D. ("Dr. Green") and Detroit Community Health Connection ("Detroit Community"), a domestic nonprofit corporation, state:

### Jurisdiction and Venue

1.    This is a medical malpractice case. Pursuant to MCL 600.2912d, attached hereto as **Exhibit 1** is the Affidavit of Merit signed by Charles Metzger, M.D. ("Dr. Metzger"), who is a board-certified internal medicine physician. According to the Affidavit of Merit, Dr. Metzger has

reviewed Mr. Holmes' pertinent records and Plaintiffs' Notice of Intent to File Claim and is of the opinion that the malpractice claims brought by Mr. Holmes are meritorious.

2. Pursuant to MCL 600.2912B, Defendant was provided with the required Notice of Intent on August 20, 2024.

3. At all times relevant hereto, Mr. Holmes, was a resident of the County of Wayne, State of Michigan.

1. Dr. Green is an internal medicine physician licensed to practice in the State of Michigan and at all pertinent times provided health care services in the City of Detroit, Wayne County, Michigan.

4. Detroit Community is a domestic nonprofit corporation, licensed as a medical facility in Michigan, and doing business in the City of Detroit, County of Wayne, Michigan.

5. The amount in controversy exceeds Twenty-Five Thousand ($25,000) Dollars, exclusive of interest and costs.

**General Allegations**

6. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 5 as though more fully set forth herein.

7. At all times pertinent hereto, Detroit Community and Dr. Green, along with their agents, employees, staff and medical personnel involved in the care of Mr. Holmes, including, but not limited to, Dr. Green and the Detroit Community staff, held themselves out to the public and to Mr. Holmes as qualified medical treaters, possessing the requisite abilities and training to properly diagnose and treat Mr. Holmes.

8. Detroit Community is vicariously liable for the acts and/or omissions of Dr. Green because he was an ostensible and/or actual agent of Detroit Community.

2

9. Mr. Holmes is currently a 63-year-old, single man, with five adult children. For approximately the past eleven years, Dr. Green, at Detroit Community, was Mr. Holmes' primary care physician. Mr. Holmes diligently attended his routine wellness appointments with Dr. Green, was compliant with follow up appointments, lab work, and taking his medications. However, there is no documentation in the records, Dr. Green, advised Mr. Holmes, of the importance he undergo a screening colonoscopy.

10. On January 16, 2024, Mr. Holmes saw Dr. Green, for the chief complaint of, "Patient presents today for stomach ache, COPD w/itchy throat, leg pain and medication refill." Dr. Green refilled his medications, and scheduled a follow up appointment in 2 months, for labs. Dr. Green, failed to advise and recommend, the importance, Mr. Holmes undergo a screening colonoscopy.

11. However, prior to Mr. Holmes' two month follow-up appointment with Dr. Green, he sought emergent care at Sinai-Grace Hospital ("SGH"), on March 2, 2024. The ED history noted, "This is a 63-year-old male who presents to the urgent today for abdominal pain. Patient states that been going on for couple weeks however it worsened last night and he is not able to sleep. He endorses pain in the upper region of his abdomen and denies any vomiting but endorses nausea. He does endorse some diarrhea and states that he strains on the toilet. Patient states that pain is worse when he eats food."

12. The emergency medical decision making and course in ED note stated, "Due to the patient's clinical presentation and stated history of present illness, my differential diagnosis includes, but is not limited to acute gastritis, GERD, ACS, diverticulitis, colitis, malignancy. **Pt denies ever having a colonoscopy**." [emphasis added]

13. Mr. Holmes was admitted. A surgical consultation plan noted, "-reviewed patient history, imaging, clinical exam. Patient does not have typical history of appendicitis and no lab

findings to suggest this. Picture is more consistent with malignancy vs GI problem." "-recommend further imaging. . .-recommend GI consult for colonoscopy to further evaluate colon."

14. Dr. Ahmad Aburashed ("Dr. Aburashed"), performed a GI consult, and noted, ". . .patient was brought to the hospital where CAT scan was done and showed some abnormality in the cecum with a question appendicitis versus mass also some suspicious lesion in the liver. . ."

15. On March 4, Mr. Holmes underwent an EGD and colonoscopy. The EGD revealed no evidence of any active GI bleed.

16. The colonoscopy was done based upon an abnormal CT scan. The operative report noted, ". . .finding of diverticulosis coli sigmoid colon was noted, polypoid mass lesion in the cecum, friable hard consistent with carcinoma, multiple biopsies were taken." "Impression: ulcerated polypoid mass lesion in the cecum most likely CA diverticulosis coli sigmoid colon."

17. The postoperative diagnosis was, "skin tag, diverticulosis coli sigmoid colon, ulcerated polypoid mass lesion in the cecum suspicious of carcinoma."

18. The pathology report from the cecum mass biopsy diagnosis was, "-High grade dysplasia, suspicious for invasion."

19. The Discharge Hospital Course noted, "HPI 63M presenting with chief complaint of abdominal pain x2 weeks. The patient states that for the last 2 weeks he has felt abdominal pain diffusely that has varied in location and severity. Exacerbated by eating to the point that the patient has a fear of eating because of the pain. He has a history of stomach pain and has been taking pantoprazole and pepto bismol in the last few days. The patient **notes that he does not believe he has ever had a full colonoscopy** but thinks he has had some kind of scope for evaluation of his prostate years ago. Patient denies any blood per rectum. He continues to have bowel movements but this has involved watery stool for the last few days. The patient notes that over the last 1-2 months, he has lost 30-40 lbs unintentionally, mostly out of lack of appetite and fear

4

4902-7658-3441, v. 3

of causing more pain when eating. He presented to the ED for further evaluation and CTAP was performed demonstrating findings concerning for appendicitis vs metastasis." [emphasis added]

20. It was further noted, "CT abdomen and pelvis was ordered and concerning for acute appendicitis versus mass. Patient was admitted for further workup of possible intra-abdominal mass." "Patient underwent a prep for a colonoscopy on 3/4/2024. Patient underwent the colonoscopy and was found to have a cecal mass. Biopsies were taken. Patient has been stable and tolerating a diet therefore at this time patient can be discharged home with plans to follow-up with Karmanos to discuss chemotherapy and further workup as well as to follow-up with Dr. Ali in clinic."

21. On March 6, 2024, Mr. Holmes saw Dr. Mohammed Al Hallak ("Dr. Al Hallak"), a gastrointestinal oncologist at Karmanos Cancer Center. It was noted under the history, "Colonoscopy findings on 3/4/2024, included a skin tag, diverticulosis coli in the sigmoid colon, and an ulcerated polypoid mass lesion in the cecum, suspicious for carcinoma." "His pathology results are still pending."

22. Dr. Al Hallak further stated, "63 yo gentleman recently diagnosed with cecal mass, biopsy taken, pathology pending, presented to discuss treatment for potential colon cancer. Likely metastatic colon cancer, right side. Liver metastasis. Partial obstruction. Abd pain 2/2 above. 40 lbs weight loss 2/2 above."

23. Dr. Al Hallak's plan included, "Though pathology is still pending, the CT Abd showed liver metastasis, it's likely a metastatic colon cancer. In the context of metastatic colon cancer, we discussed with the patient that the goal of treatment is to control the disease's progression, **as it is no longer curable**. The patient understood this." [emphasis added]

24. In addition, his plan noted, "We discussed with him the treatment for the metastatic colon cancer using chemotherapy. I need a Chemo-Port to start him on FOLFOX as soon as

possible. He understands that the treatment is not curable but will help to control the symptoms and prolong his survival. Will have to watch him very closely for bowel obstruction as the mass seem to almost blocking the colon. If his abdominal pain gets worse or he started to have vomiting he needs to go to the ER as at that point I would be concerned about bowel obstruction and if that is confirmed he will need to have a diverting colostomy."

25. On March 6, 2024, Mr. Holmes had a Mediport placed.

26. On March 8, 2024, Mr. Holmes was seen in SGH ED, for abdominal pain. The ED history noted, "Patient was recently diagnosed with stage IV colon cancer and is set up to start chemotherapy on Monday. He has been having 2 weeks of abdominal pain that comes and goes located all over."

27. The ED decision making stated, "Think that the patient's pain is not being properly treated with the celecoxib." "Patient will get morphine and Zofran for pain and nausea control." "General surgery was contacted and they would like to admit the patient for an ileostomy as they state that the malignancy is large and the patient is likely to obstruct so they would like to get ahead of it. Due to the patient's current condition, I believe further care within the hospital is warranted. I discussed this with the patient and they are amenable to this plan. I contacted general surgery to evaluate and admit the patient."

28. The discharge hospital course noted, "Patient was taken to the OR emergently for an laparoscopic diverting loop ileostomy and liver biopsy." "Continues to have ostomy output with gas. Advance to a regular diet. Tolerating appropriately." "Patient appropriate for discharge home. Karmanos to contact patient for rescheduling of chemotherapy. . ."

29. On March 18, 2024, Mr. Holmes returned to SGH, for colostomy training and supplies, as he had not yet followed up with the surgical team in the clinic. A surgical resident

came to the ED and provided appropriate colostomy education and attached a new colostomy bag, and new supplies.

30.  Currently, Mr. Holmes is still undergoing chemotherapy, with Dr. Al Hallak, at the Karmanos Cancer Center.

31.  During the entire period of time, Mr. Holmes, was under the care and treatment of Dr. Green, at Detroit Community, the records clearly document, Dr. Green never discussed, recommended, planned, and/or ordered Mr. Holmes' to undergo a screening colonoscopy. According to Mr. Holmes, no such discussions and/or recommendations were ever conveyed by Dr. Green.  He had no previous knowledge about screening colonoscopies, until after he was diagnosed with colon cancer by his medical providers at Sinai-Grace Hospital.

32.  As a result of the failure of Dr. Green and Detroit Community (including, but not limited to any and all of their employees, agents, and healthcare personnel) who provided care and treatment to Mr. Holmes, Mr. Holmes has been diagnosed with uncurable stage IV colon cancer with metastasis to his liver and an expected shortened life-expectancy.  As a result of the negligence, Mr. Holmes suffered and continues to suffer damages.

33.  As an further result of the failure of Dr. Green and Detroit Community (including, but not limited to any and all of their employees, agents, and healthcare personnel) who provided care and treatment to Mr. Holmes, Mr. Holmes suffered painful and unnecessary hospitalizations, invasive therapies and treatment, depression, debility, deterioration, financial hardship, loss of enjoyment of life, severe pain and discomfort, mental anguish, fright, shock, anxiety, emotional distress, limitation of normal activities, and other related damages.

## COUNT I

34.  Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 33 as though more fully set forth herein.

35. Detroit Community held itself out as health care provider for the public.

36. Detroit Community undertook, through its agents and/or employees, including Dr. Green, to properly care for and provide medical and chiropractic treatment to Mr. Holmes.

37. Detroit Community stands liable for the negligent acts of its agents and employees who treated Mr. Holmes, including, but not limited to Dr. Green.

38. Detroit Community by and through its physicians, including Dr. Green, held a duty to act in accordance with the recognized standard of care applicable to the treatment rendered to Mr. Holmes.

39. While Mr. Holmes was being treated by Detroit Community, by reason of the negligence of Dr. Green and all other servants, agents and employees, Detroit Community breached the duties it owed to Mr. Holmes in a manner including, but not limited to, the following:

   a. Failing to treat Mr. Holmes in accordance with the acceptable standard of care for internal medicine physicians and/or healthcare providers with the same medical specialty;

   b. Failing to properly perform and document physical examinations of Mr. Holmes;

   c. Failing to properly and timely recommend, advise, and order a screening colonoscopy for Mr. Holmes;

   d. Failing to timely refer Mr. Holmes to a gastroenterology specialist for further work up to rule out colon cancer;

   e. Failing to ensure the proper treatment of Mr. Holmes, so as to prevent his cancer from going undiagnosed and untreated resulting in his stage 4 colon cancer diagnosis;

   f. Failing to properly develop an appropriate wellness care plan for Mr. Holmes, as his primary care physician;

   g. Failing to properly and diligently conduct a history of Mr. Holmes, including a thorough family history; and

   h. Other breaches of the standard of care as discovery may reveal.

8

40. The breaches of the standard of care by Detroit Community through its agents and/or employees, including Dr. Green, involved in the care of Mr. Holmes, are further set forth in the Affidavit of Dr. Metzger, attached as **Exhibit 1**.

41. As a direct and proximate result of Detroit Community and Dr. Green's deviations from the standard of care as outlined in the Affidavit of Dr. Metzger, Mr. Holmes has been diagnosed with uncurable stage IV colon cancer with metastasis to his liver and an expected shortened life-expectancy. As a result of the negligence, Mr. Holmes suffered and continues to suffer damages. See Affidavit of Dr. Metzger, attached as **Exhibit 1**.

42. Furthermore, as a direct and proximate result of Detroit Community and Dr. Green's deviations from the standard of care as outlined in the Affidavit of Dr. Metzger, Mr. Holmes suffered painful and unnecessary hospitalizations, invasive therapies and treatment, depression, debility, deterioration, financial hardship, loss of enjoyment of life, severe pain and discomfort, mental anguish, fright, shock, anxiety, emotional distress, limitation of normal activities, and other related damages.

Wherefore, Plaintiff respectfully requests judgment in his favor against Defendants in an amount in excess of Twenty-Five Thousand ($25,000) Dollars, together with interest, costs, and attorney fees, and any other relief the court finds appropriate.

### COUNT II

43. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 42 as though more fully set forth herein.

44. Dr. Green had a duty to act in accordance with the recognized standard of care applicable and exercised by like physicians for the treatment he rendered to Mr. Holmes.

45. Dr. Green violated the duty owed to Mr. Holmes by deviating from the applicable standard of care in a manner including, but not limited to:

a. Failing to treat Mr. Holmes in accordance with the acceptable standard of care for internal medicine physicians and/or healthcare providers with the same medical specialty;

b. Failing to properly perform and document physical examinations of Mr. Holmes;

c. Failing to properly and timely recommend, advise, and order a screening colonoscopy for Mr. Holmes;

d. Failing to timely refer Mr. Holmes to a gastroenterology specialist for further work up to rule out colon cancer;

e. Failing to ensure the proper treatment of Mr. Holmes, so as to prevent his cancer from going undiagnosed and untreated resulting in his stage 4 colon cancer diagnosis;

f. Failing to properly develop an appropriate wellness care plan for Mr. Holmes, as his primary care physician;

g. Failing to properly and diligently conduct a history of Mr. Holmes, including a thorough family history; and

h. Other breaches of the standard of care as discovery may reveal.

46. Dr. Green's breaches of the standard of care are further set forth in the Affidavit of Dr. Metzger, attached as **Exhibit 1**.

47. As a direct and proximate result of Dr. Green's deviations from the standard of care as outlined in the Affidavit of Dr. Metzger, Mr. Holmes has been diagnosed with uncurable stage IV colon cancer with metastasis to his liver and an expected shortened life-expectancy. As a result of the negligence, Mr. Holmes suffered and continues to suffer damages. See Affidavit of Dr. Metzger, attached as **Exhibit 1**.

48. Furthermore, as a direct and proximate result of Detroit Community and Dr. Green's deviations from the standard of care as outlined in the Affidavit of Dr. Metzger, Mr. Holmes suffered painful and unnecessary hospitalizations, invasive therapies and treatment, depression, debility, deterioration, financial hardship, loss of enjoyment of life, severe pain and

discomfort, mental anguish, fright, shock, anxiety, emotional distress, limitation of normal activities, and other related damages.

      Wherefore, Plaintiff respectfully requests judgment in his favor against Defendants in an amount in excess of Twenty-Five Thousand ($25,000) Dollars, together with interest, costs, and attorney fees, and any other relief the court finds appropriate.

      Respectfully submitted,

      HERTZ SCHRAM PC

      By: /s/ Steve J. Weiss
      Steve J. Weiss (P32174)
      Attorneys for Plaintiff
      1760 South Telegraph Road, Suite 300
      Bloomfield Hills, Michigan 48302
      (248) 335-5000

Dated: January 30, 2025

**Exhibit 1**

LAW OFFICES HERTZ SCHRAM PC

12

4902-7658-3441, v. 3

## AFFIDAVIT OF MERIT CHARLES E. METZGER, M.D.

State of Florida )
)ss.
County of Palm Beach )

I, Charles E. Metzger, M.D., being first duly sworn, depose and state as follows:

1. I am a licensed physician, board certified in internal medicine. During the relevant time period, more than 50% of my professional time was and currently still is, devoted to the active clinical practice of internal medicine.

2. I have reviewed the following pertinent records and documents regarding Christopher Holmes ("Mr. Holmes"):

   a) Detroit Community Health Connection records;
   b) Sinai-Grace Hospital records;
   c) Karmanos Cancer Center records;
   d) Epic Health records; and
   e) Plaintiff's Notice of Intent to File a Claim.

3. The applicable standard of care or practice is to generally perform as a reasonably prudent physician in the area of internal medicine under the same or similar circumstances.

4. Based on my review of the aforementioned documents and my knowledge, education, training and experience, I am of the opinion that Dr. Alan Green ("Dr. Green") and the business entities named in the Notice of Intent to File a Claim, by and through their agents, employees, medical personnel, and physicians, breached the applicable standard of care owed to Mr. Holmes, in a manner including, but not limited to the following:

   a. Failing to treat Mr. Holmes in accordance with the acceptable standard of care for internal medicine physicians and/or healthcare providers with the same medical specialty;

   b. Failing to properly perform and document physical examinations of Mr. Holmes;

   c. Failing to properly and timely recommend, advise, and order a screening colonoscopy for Mr. Holmes;

   d. Failing to timely refer Mr. Holmes to a gastroenterology specialist for further work up to rule out colon cancer;

  e. Failing to ensure the proper treatment of Mr. Holmes, so as to prevent his cancer from going undiagnosed and untreated resulting in his stage 4 colon cancer diagnosis;

  f. Failing to properly develop an appropriate wellness care plan for Mr. Holmes, as his primary care physician;

  g. Failing to properly and diligently conduct a history of Mr. Holmes, including a thorough family history;

  h. Other breaches of the standard of care as discovery may reveal.

5. As a direct and proximate result of the aforementioned breaches of the applicable standard of care by Dr. Green, Mr. Holmes suffered and continues to suffer injuries and damages, including but not limited to, diagnosed with uncurable stage IV colon cancer with metastasis to his liver and an expected shortened life-expectancy.

6. Had Mr. Holmes been provided with the appropriate treatment, pursuant to the standard of care as outlined in Paragraph 4, Mr. Holmes' injuries and damages as set forth herein, more likely than not, would have been prevented.

7. The above attestations are based upon information contained in Mr. Holmes' records which are currently in my possession. I reserve the right to modify and/or offer additional opinions in the event further records or evidence is provided to me after discovery has been initiated.

8. If called to testify as a witness in this case, I am competent and qualified to testify to the above statements.

  I declare under penalty of perjury that the foregoing is true and correct.

            _____
            Charles E. Metzger, M.D.

Executed on 01/24/2025

2

Subscribed and sworn to before me this
__24th__ day of __01__, 2025, by
Charles e. Metzger, M.D., personally
known to me or proved to me on the basis of
satisfactory evidence to be the person who appeared before
me.

Notary Public __Gustavo E Escobar__

County, __Palm Beach__

My Commission expires: __10-26-2027__

GUSTAVO E. ESCOBAR
Notary Public - State of Florida
Commission # HH 458889
My Comm. Expires Oct 26, 2027
Bonded through National Notary Assn.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CHRISTOPHER HOLMES,

      Plaintiff,

v.

ALAN GREEN, M.D., and
DETROIT COMMUNITY HEALTH
CONNECTION, a domestic nonprofit
corporation,

      Defendants.

Case No. 25-    -NH
Hon.

_____/

HERTZ SCHRAM PC
Steve J. Weiss (P32174)
Attorneys for Plaintiff
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48032
(248) 335-5000
sweiss@hertzschram.com
_____/

## DEMAND FOR JURY TRIAL

Plaintiff, Christopher Holmes, by and through his attorneys, Hertz Schram PC, hereby demands a trial by jury.

                Respectfully submitted,

                HERTZ SCHRAM PC

                By: /s/ Steve J. Weiss
                    Steve J. Weiss (P32174)
                    Attorneys for Plaintiff
                    1760 South Telegraph Road, Suite 300
                    Bloomfield Hills, MI 48302
                    (248) 335-5000

Dated: January 30, 2025